UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| YULANDA HADDIX, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 13-1594 |
| v. | : | OPINION |
| CAMDEN COUNTY YOUTH DETENTION CENTER, CPT. ELARIS ROBINSON, individually, and CAMDEN COUNTY EDUCATIONAL SERVICE COMMISSION, | : : : : | |
| Defendants. | : | |

This matter is before the Court on Defendants' motions for summary judgment. Oral argument on the motions was heard on May 21, 2015 and the record of that proceeding is incorporated here. For the reasons discussed on the record and those below, the motions will be granted.

<u>Background</u>

Plaintiff Yulanda Haddix was an employee of Defendant Camden County Educational Services Commission ("CCESC"). She was hired as a special education teacher in 1998 and worked at Defendant Camden County Youth Detention Center ("CCYDC") until June 30, 2012.

CCYDC is a detention center for troubled and/or incarcerated youth under the control of the County of Camden. The County of Camden contracts with CCESC to provide education services to the detained youth housed at the CCYDC. (DelVecchio Aff., ¶2; Hardy Dep., 11:20-25). CCESC hires the teachers to work at the Center on a contract basis. (DelVecchio Aff., ¶3).

1

Plaintiff held a Special Education certification from the State of New Jersey Department of Education ("NJDOE").  Earlier in her career, she taught all academic subjects including math, science, reading, and English.  She became highly qualified in science by the NJDOE.  She then started to teach life skills, vocational education, and family.  (Haddix Dep., 24:13-25, 114:17-20; Hardy Aff., ¶ 4.)  The NJDOE requires a Certification to teach certain subjects, including family life.  (Hardy Dep., 23:13-24:2; Hardy Aff., ¶6.) Plaintiff did not have the required Certification in Family and Consumer Sciences. (Haddix Dep., 114:23-115:10.)

Tammy Hardy, the CCESC site education supervisor at CCYDC, communicated the NJDOE requirement to Plaintiff and others during her monthly staff meetings as far back as 2009.  (Hardy Dep., 24:7-26:12, Hardy Aff., ¶ 3 and 5.)  In February 2012, then-Superintendent of CCESC, Dr. Edward Wasilewski, held a meeting with Plaintiff and two other teachers, Kathleen Hyatt and Bernadette Swietanski, about their continued employment with CCESC.  They were informed that to continue working at CCYDC they were to obtain subject matter Certifications from the NJDOE which required all three teachers to take a Praxis exam through the State of New Jersey and finish any remaining coursework to obtain the Certifications. (Hardy Dep., 24:3-6, 27:11; Wasilewski Aff., ¶3, 11; Hardy Aff., ¶6.)  The Certification requirement for the three CCESC employees was mandated by the County Superintendent, Margaret Nicolosi. (Hardy Dep., 22:13-17; Wasilewski Aff., ¶2 and 3; Hardy Aff. ¶6.)

Thereafter, Plaintiff took the Praxis and failed.  She had an opportunity to take the examination a second time, but chose not to do so. (Haddix Dep., 114-23-115:1; 117:19-118:4; Wasilewski Aff., ¶8 and 11; Hardy Aff., ¶9.)  On April 2, 2012, CCESC issued a Rice Notice to Plaintiff informing her that her employment would be discussed

at the next CCESC board meeting scheduled for April 4, 2012. (Letter to Haddix from Dr. Wasilewski dated April 2, 2012.) On April 4, 2012 CCESC voted to terminate Plaintiff's, Ms. Hyatt's, and Ms. Swietanski's employment because they did not hold the required certification mandated by the Camden County Superintendent of Schools and the State. However, during Dr. Wasilewski's presentation to the Board, he made it clear that if Plaintiff were to obtain the proper certification, the CCESC would rescind her termination. (Wasilewski Aff., ¶8.) Plaintiff was notified of her termination on April 5, 2012, which was to be effective on June 30, 2012. (Superintendent's Report to the CCESC's Board of Directors dated April 4, 2012, ¶5.)

On April 5, 2012, Plaintiff signed a sexual harassment complaint against Defendant Captain Elaris Robinson, a guard at CCYDC employed by the County of Camden; the County received the completed Affirmative Action Complaint form on April 10, 2012. (Robinson Dep., 10:25-11:4, 13:15-25.) Plaintiff has alleged in this case that over a number of years, Robinson made unwanted sexual advances toward Plaintiff asking for kisses, dates, and sexual relations/favors. Plaintiff refused these, but did not voice or file any complaints allegedly for fear of possible retaliation. (Hardy Dep., 15:10-19; Edwards Dep., 45:10-17.) On April 11, 2012 the County notified Hardy that Plaintiff filed a Complaint. (Memorandum from Cirii copied to Hardy dated April 11, 2012.) This was the first that Hardy learned Plaintiff had an issue with Robinson. (Hardy Dep., 14:8-151, 63:9-64:11, 66:2-16; Wasilewski Aff., ¶12; Hardy Aff., ¶16.) Hardy immediately notified CCESC. (Hardy Dep., 15:8-9.)

The County's Affirmative Action Officer initially investigated the Complaint. The Action Officer did not sustain the allegation. (Letter to Haddix from Affirmative Action Officer dated April 16, 2012.) On April 20, 2012, Plaintiff complained to CCESC and the

3

County that Robinson confronted her in CCYDC's parking lot about the sexual harassment complaint she filed against him. Robinson's supervisors were immediately called and directed to inform Robinson that he was to have no contact with Plaintiff. (Memo to file dated April 20, 2012 and Plaintiff's Incident Report dated April 24, 2012.) The CCESC Superintendent also contacted the County to address Plaintiff's complaint. (Memo to file dated May 1, 2012; Wasilewski Aff., ¶15.) On April 24, 2012, the County's Human Resources Department issued an investigation report regarding the sexual harassment complaint. It also did not find that Plaintiff's allegations rose to the level of sexual harassment. (Memo dated April 24, 2012.) Plaintiff filed a Complaint with the EEOC on April 24, 2012.

      Plaintiff's April 5, 2012 sexual harassment complaint alleged that she received two text messages from Robinson that she felt were inappropriate. The texts that came from "Eva" read "Happy Valentine's Day!" on February 14, 2012 and "Can you meet for cocktails or a quick bite? I really need to talk with you" on March 22, 2014. (Eisen Dep., 22:2-12; Haddix Dep., 74:14-75:10.) The complaint did not allege a request for a kiss or any other sexually inappropriate information. (Haddix Dep., 81:23-82:6.) Plaintiff also did not provide any other instances of inappropriate comments or other inappropriate behavior when she was interviewed during the investigation. (Eisen Dep., 34:23, 62:19-63:16, 64:2-16, 70:15-71:5.) The investigator found the information provided by Plaintiff was not a violation of the County policy; he "couldn't prove that Mr. Robinson was involved, in any way, and there was very little to go on, so [he] found that it didn't rise to the level of violating the policy." (Eisen Dep., 16:4-17:3.)

## Plaintiff's Claims

Count One of the Complaint alleges Plaintiff was subjected to an adverse employment action (unlawful discharge) based on race discrimination and gender discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C.A. §2000(e). Count Two of the Complaint alleges retaliatory discharge after Plaintiff offered statements in conjunction with investigations, and filed charges in her own right, involving sexual harassment and discrimination in the workplace, in violation of Title VII. Count Three of the Complaint alleges Plaintiff was subjected to an adverse employment action (unlawful termination) based on race discrimination and gender discrimination in violation of the New Jersey Law Against Discrimination, N.J. Stat. Ann. §10:5-1. Count Four of the Complaint alleges sexual harassment and hostile environment workplace discrimination in violation of the NJLAD. Count Five of the Complaint alleges retaliatory discharge in violation of the NJLAD. Count Six alleges a claim for civil conspiracy in violation of 42 U.S.C. §1985. Count Seven alleges individual liability against Defendant Cpt. Elaris Robinson pursuant to the NJLAD for race/gender harassment which created a hostile work environment, including respondeat superior.

## Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a showing must be supported by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A). A "genuine" dispute of

"material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts, however, will fail to preclude the entry of summary judgment. Id.

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, and must provide that party the benefit of all reasonable inferences. Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014). Any such inferences "must flow directly from admissible evidence[,]" because "'an inference based upon [ ] speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'" Halsey, 750 F.3d at 287 (quoting Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990) (citing Anderson, 477 U.S. at 255)).

Accordingly, the moving party initially has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Again, to withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).

6

> Indeed,
>
> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. The movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## Discussion

Analysis of claims made pursuant to the NJLAD generally follows the analysis of Title VII claims. Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 498 (3d Cir. 1999). Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). In assessing claims under Title VII and related retaliation claims, courts apply the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973). Under that framework, a plaintiff must satisfy the initial burden of making a *prima facie* case of discrimination.

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show the following: (1) that she is a member of a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment action; and (4) that the adverse action occurred under circumstances that give rise to an inference of discrimination. Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 412 (3d Cir. 1999).

If the employee makes out a *prima facie* case, the burden of production shifts to the employer to establish a legitimate, nondiscriminatory reason for its actions. Fuentes v. Borough of Watchung, 286 F. App'x 781, 784–85 (3d Cir. 2008). If the employer establishes a legitimate, nondiscriminatory reason for its actions, the burden of production shifts back to the employee to show that the employer's proffered reason was a pretext for actual discrimination. Id. The Third Circuit has held that a plaintiff may defeat a motion for summary judgment by pointing "to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id.

Here, after viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to establish a *prima facie* case of discrimination. While Plaintiff is an African-American woman who was terminated from her job, she is unable to demonstrate that she was qualified for the position. Plaintiff did not have, and failed to obtain, the proper State certification for the subject she was teaching. As such, summary judgment is granted on Plaintiff's claims that she was unlawfully discharged based on race or gender.

Title VII also prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII] . . . , or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII.]" 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must establish the following: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995).

In this case, there is no evidence in the record to support the claim that Plaintiff was terminated in retaliation for filing a complaint regarding Robinson's actions or otherwise opposing discrimination made illegal by Title VII. Plaintiff produces no evidence which could be construed as showing that the decision not to renew Plaintiff as a teacher was motivated by any reason other than Plaintiff's lack of proper certification. Further, CCESC terminated Plaintiff *before* she filed the complaint against Robinson. Therefore, the Court will also enter summary judgment in favor of Defendants on Plaintiff's claims of retaliatory discharge.

Next, to establish a hostile work environment claim under the LAD, a plaintiff "must demonstrate that the defendant's conduct (1) would not have occurred but for the employee's [gender]; and [the conduct] was (2) severe or pervasive enough to make a (3) reasonable [person of the same protected class] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." Taylor v. Metzger, 706 A.2d 685, 688-89 (N.J. 1998) (quotations omitted). The New Jersey Supreme Court requires a cumulative analysis of the incidents comprising an alleged

hostile work environment. See Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 455 (N.J. 1993). "[A]n employer will be held vicariously liable in situations where it delegates authority to control a work environment to a supervisor, and the supervisor abuses that authority, or where sexual harassment is foreseeable and the employer is negligent in having in place or enforcing anti-harassment policies, or where the employer intended for or gave apparent authorization to the harassing conduct." Smith v. Exxon-Mobil Corp., 374 F. Supp. 2d 406, 421 (D.N.J. 2005)

Here, CCESC did not know about the alleged harassment. In fact, on October 11, 2011, in connection with the County's investigation into a co-worker's sexual harassment complaint against Robinson, Plaintiff was specifically asked whether she had experienced any offensive conduct by Robinson. Her interview with the investigators is summarized as follows.

> Personally, [Plaintiff] does not have a problem with Cpt. Robinson, but professionally she describes him as a "bully," acts as the "boss of the building" and "whatever he says goes." She stated that he is a dominant man, very controlling, demeaning and intimidating to the teachers.
> Ms. Haddix stated that when Cpt. Robinson says something inappropriate, she will address him and he is inappropriate to many people. Furthermore, he uses foul language in front of guests and told a guest speaker that her clothes were too tight/dress is too short.
> Ms. Haddix would not disclose anything specific and finally admitted to Cpt. Robinson asking for a kiss after repetitive questioning. She did not kiss Cpt. Robinson and could not remember when the request occurred.

(March 2, 2012 Memorandum from Eisen & Morman to Cirii.) Considering the totality of the circumstances, Plaintiff's statement that she did not have a problem with Robinson when questioned specifically about sexual harassment is telling in regard to how severe or pervasive the conduct was. Further, once Plaintiff did complain about Robinson's conduct, the County and CCESC responded immediately in accordance with

10

their respective anti-harassment policies. Summary judgment will be granted on the sexual harassment and hostile environment workplace discrimination claim.

Regarding the individual liability claim against Robinson, Plaintiff acknowledges that individual employees cannot be held liable for employment discrimination under Title VII.  See Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996).  In addition, because Plaintiff's underlying causes of action fail, there can be no claim for aiding and abetting in violation of the NJLAD.  Ivan v. County of Middlesex, 595 F. Supp. 2d 425, 463 (D.N.J. 2009) ("[F]or a defendant to be individually liable for aiding and abetting, the employer must also be liable under the LAD. It is not the act of discrimination but rather the failure in the employer's response that an aider and abettor is charged with assisting.").

Finally, the Court finds that Plaintiff has presented no evidence to show civil conspiracy in violation of 42 U.S.C. §1985.

Conclusion

Accordingly, Defendants' motions for summary judgment will be granted.  An appropriate Order will issue.

Dated: June 16, 2015                                  /s/ Joseph H. Rodriguez
                                                                            JOSEPH H. RODRIGUEZ
                                                                                       U.S.D.J.